UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CIV - HUCK**

Case No. **06-60430**

CELLANTENNA CORP., a Florida corporation,

    Plaintiff,

**MAGISTRATE JUDGE SIMONTON**

vs.

FEDERAL COMMUNICATIONS COMMISSION and THE UNITED STATES OF AMERICA,

    Defendants.
_____/

## COMPLAINT

Plaintiff, CELLANTENNA CORP. hereby sues Defendants, the FEDERAL COMMUNICATIONS COMMISSION (FCC) and THE UNITED STATES OF AMERICA (UNITED STATES) and alleges as follows:

### COUNT I - Action for Declaratory Relief

1. This is an action for declaratory relief under authority of 28 U.S.C. §2201.

### Parties

2. Plaintiff, CELLANTENNA CORP. (CELLANTENNA) is a Florida corporation having its principal place of business in Broward County, Florida.

3. Defendant, the FEDERAL COMMUNICATIONS COMMISSION is an agency of the United States government. Among other matters, the FCC adopts regulations which govern the interference potential of devices which are capable to emitting sufficient radio frequency energy to



cause harmful interference to radio communications. The FCC applies such rules to the use, manufacture, import, sale, or shipment of such devices.

4.  THE UNITED STATES OF AMERICA is named as a party Defendant in this action due to Plaintiff's challenge to the constitutionality of certain enumerated sections of the Communications Act of 1934 (the Act).

### Jurisdiction

5.  This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

### Venue

6.  Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391.

### Impact of Act Upon the Plaintiff

7.  CELLANTENNA is engaged in the business of selling and distributing radio frequency communication equipment. Included among the products which it distributes are devices which cause radio frequency interference, and which are commonly called "Radio Frequency (RF) Jammers." These devices including "Cellular Jammers", are designed to deliberately jam or disrupt wireless communications. Section 333 of the Act, 47 U.S.C. §333 makes it unlawful to wilfully or maliciously interfere with or cause interference to radio communications. Such interference is precisely what cellular and RF jamming devices do.

8.  Moreover, Sections 302(a) and (b) of the Act, 47 U.S.C. §302(a) and (b) authorize the FCC to adopt regulations that govern the interference potential of such devices, stating in relevant part as follows:

> "**Sec.302. Devices which interfere with radio reception.**
>
> (a)  **Regulations**

-2-

> The Commission may, **consistent with the public interest, convenience and necessity, make reasonable regulations** (1) governing the interference potential of devices which in their operation are capable of emitting radio frequency energy by radiation, conduction, or other means in sufficient degree to cause harmful interference to radio communications..." (Emphasis Supplied)
>
> "b)   **Restrictions**
>
> No person shall manufacture, import, sell, offer for sale, or ship devices or homes electronic equipment and systems, or use devices, which fail to comply with regulations promulgated pursuant to this section."

9.   However, 47 U.S.C. §302(c) provides for certain exceptions, among them, RF and jamming devices used by the Federal Government, stating in relevant part as follows:

> "(c)   **Exceptions**
>
> The provisions of this section shall not be applicable....to devices....manufactured .....for use by the Government of the United States or any agency thereof."

10.   In the exercise of its rule making power, the FCC promulgated §2.803 of the Commission's Rules; 47 C.F.R. §2.803 which likewise exempted radio frequency devices intended for use by the United State Government from the Commission's equipment authorization requirements.

11.   Moreover, FCC Rule 2.807(d); 47 CFR §2.807 reiterates the federal exemption as follows:

> "**§2.807(d) Statutory exceptions.**
>
> As provided by Section 302(c) of the Communications Act of 1934, as amended, §2.803 shall not be applicable to:

-3-

> (d) Radio frequency devices for use by the Government of the United States or any agency thereof; Provided, however, that this exception shall not be applicable to any device after it has been disposed of by such Government or agency."

12. Significantly, although sales of RF jamming devices to the United States Government and its agencies are exempt from the provisions of the Act and the referenced regulations, neither the Act nor the FCC's rules contain any corresponding exemption for the sale of cellular or RF jamming devices to state and or local governments.

### Cellular Jamming Devices and the Public Interest

13. It is well known that radio frequency jamming equipment may be effectively utilized to disarm and disable remotely controlled improvised explosive devices (RCIED). In other words, cellular jamming equipment can disable a bomb designed to be detonated by the use of a remote cellular telephone.

14. Recognizing that the responsible use of cellular jamming devices is an effective tool in the fight against terrorism, several state and local law enforcement agencies have contacted the Plaintiff to explore the purchase of cellular jamming devices for law enforcement purposes.

15. Section 302(a) and (b) and Section 333 of the Act, and the related FCC Rule, 47 C.F.R. §2.803 (a) effectively prohibit the sale of such devices by the Plaintiff to state or local law enforcement agencies.

### Conflict With Homeland Security Act of 2002

16. In response to the tragedy of 9-11, and in recognition of the dangers posed by terrorist elements, the United States Congress enacted the Homeland Security Act of 2002, 6 U.S.C. §101 et. seq. ( hereafter, the "HSA").

17.     The legislative intent of the Congress, and the legitimate governmental interest and public policy considerations expressed in the HSA, are in stark conflict with the aforesaid provisions of the Communications Act of 1934 and related rules.

18.     Whereas the FCC prohibits the sale of radio frequency and cellular jammers to state or local police departments, the HSA consistently and repeatedly directs the Department of Homeland Security to take whatever measures are necessary to **empower** local law enforcement agencies and first responders in the fight against global terrorism.   Specifically, but not necessarily by way of limitation, Section 162 of the HSA, 6 U.S.C. §162 sets forth the mission of the Office of Homeland Security and its duties; stating as follows:

> **"Sec.162 Mission of Office; duties.**
> (a) Mission
>
> The mission of the Office shall be ..
> (1) to serve as the national focal point for work on law enforcement technology, and
> (2) to carry out programs that, through the provisions of equipment, training and technical assistance, improve the safety and effectiveness of law enforcement technology and improve access to such technology by Federal, State, and local law enforcement agencies.
> ..............
> (b) Duties:
> In carrying out its mission, the office shall have the following duties:
> ..............
> (4) To establish and maintain program to certify, validate, and mark or otherwise recognize law enforcement technology products that conform the standards established and maintained by the Office in accordance with the National Technology Transfer and Advancement Act of 1995 (Public Law 104-113).  The program may, at the discretion of the Office, allow for supplier's declaration of conformity with such standards.
> ............
> (6) To carry out research, development, testing, evaluation, and cost-benefit analyses in fields that would improve the safety, effectiveness,

and efficiency of law enforcement technologies used by Federal State, and local law enforcement agencies, including but not limited to.....

..............

**(G)** equipment for particular use in counterterrorism, including devices and technologies to disable terrorist devices.

..............

**(9)** To develop, and disseminate to State and local laws enforcement agencies, technical assistance and training material for law enforcement personnel, including prosecution."

19. Moreover, Section 102 of the HSA directs the Secretary of Homeland Security to coordinate its efforts with state and local governmental agencies. In this regard, 6 U.S.C. §102(c)(1) provides as follows:

"(c) Coordination with Non-Federal Entities: With respect to homeland security, the Secretary shall coordinate through the Office of State and Local Coordination (established under section 801)( including the provision of training and equipment with State and local government personnel, agencies, and authorities, with the private sector, and with other entities, including by -

(1) coordinating with State and local government personnel, agencies and authorities, and with the private sector, to ensure adequate planning, equipment, training and exercise activities;

20. Additionally, 6 U.S.C. §302 imposes upon the Secretary additional responsibility for the development of countermeasures to terrorist threats in partnership with state and local governments. Section 302 provides in relevant part as follows:

**"Sec. 302, Responsibilities and Authorities of the Under Secretary For Science and Technology.**

The Secretary, acting through the Under Secretary for Science and Technology, shall have the responsibility for -

..............

(2) developing, in consultation with other appropriate executive agencies, a national policy and strategic plan for identifying priorities, goals, objectives and policies for, and coordinating the Federal Government's civilian efforts to identify and develop

-6-

countermeasures to chemical, biological, radiological, nuclear, and other emerging terrorist threats, including the development of comprehensive, research-based definable goals for such efforts and development of annual measurable objectives and specific targets to accomplish and evaluate the goals for such efforts;

(6) establishing a system for transferring homeland security development or technologies to Federal, State, local government, and private sector entities;"

21. Finally, Section 801 establishes within the Office of the Secretary of Homeland Security an office for state and local government coordination to "oversee and coordinate departmental programs for, and relationships with, state and local governments". 6 U.S.C. 801 (b) (1). Indeed, the Office is required, pursuant to 6 U.S.C. §801 (b) (2) and (3) to:

> "**Sec. 801. Office for State and Local Government Coordination.**
>
> (b) **Responsibilities.** - The Office established under subsection (a) shall-
> (1) coordinate the activities of the Department relating to State and local government;
> (2) assess, and advocate for the resources needed by State and local government to implement the national strategy for combating terrorism;
> (3) provide State and local government with regular information, research. and technical support to assist local efforts at securing the homeland."

**SECTIONS 302(A) AND 303 OF THE COMMUNICATIONS ACT OF 1934 ARE VIOLATIVE OF SUBSTANTIVE DUE PROCESS AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

22. The primary and overriding government objective of the United State of America, and indeed all sovereign nations, is the protection of its citizenry.

23. In addressing and identifying this paramount governmental interest, and in consideration of the new realities present in the post 9-11 world, Congress enacted the Homeland Security Act of 2002. As previously stated herein, the legislative goal sought to be achieved by the Congress, as set forth in the Mission Statement of the HSA and directives to the Secretary, is to empower **ALL** governmental agencies, state, local and federal, with the necessary tools to protect the general public. As specifically set forth in the HSA, Congress clearly intended for state and local law enforcement agencies and first responders to have ready access to advanced technical equipment to be used in the defense of the nation against terrorism.

24. The RF and cellular jamming devices offered by the Plaintiff are precisely the type of technology which has been requested by, and is needed by state and local law enforcement agencies to neutralize the killing potential of deadly remote controlled improvised explosive devices. When reviewed in the context of the public policy statements and specific legislative directives which permeate the HSA, it is clear that certain provisions of the depression era Communication Act, 1934, specifically, 47 U.S.C. §302 and 47 U.S.C.§303 are constitutionally infirm.

25. To the extent that they arbitrarily prohibit the sale and distribution of radio frequency interference devices to state and local law enforcement agencies, while permitting the sale of such items to be United States government, 47 U.S.C. §302(a) (b) and (c), 47 U.S.C. §333, and FCC Rule 2.803, 47 C.F.R. §2.803 are unconstitutional on their face, and in their application as being violative of the substantive due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution for the following reasons:

  a. The provisions of the aforesaid Statutes, and Rule 2.803 which effectively prohibit the sale of RF and cellular jamming devices to state and local law enforcement agencies is not rationally related to a legitimate governmental interest.

  b. The provisions of the aforesaid Statutes, and Rule 2.803 which effectively prohibit the sale of RF and cellular jamming devices to state and local law enforcement agencies are, in fact, in conflict with legitimate and critical governmental objectives which seek to provide for the national defense and the public policy expressed by the Congress in the HSA.

  c. The prohibition against the sale of RF and cellular jamming equipment to state and local law enforcement agencies, while exempting the sale of such equipment to the Federal Government is arbitrary and capricious in its implementation and enforcement.

  d. The omission of state and local law enforcement agencies from the classification of those entities exempted from §302 and 333 of The Communications Act of 1934, as contrasted with the inclusion of the Federal Government as an exempt party, is arbitrary, capricious, discriminatory, and without rational basis.

26. In addition to the foregoing, the aforesaid sections of The Communications Act of 1934 are repugnant to, and in irreconcilable conflict with, The Homeland Security Act of 2002 and have been impliedly repealed by Congress, to the extent such offending provisions prohibit the sale of RF and cellular jamming devices to state and local law enforcement agencies.

27.     On August 24, 2005, the FEDERAL COMMUNICATIONS COMMISSION issued a Letter of Inquiry to the Plaintiff regarding a complaint alleging that CELLANTENNA CORP. was marketing to law enforcement and other government agencies within the United States uncertified devices that intentionally caused radio frequency interference in violation of the various sections of The Communications Act referenced herein.  As a result, Plaintiff has a reasonable apprehension of enforcement action by the FCC with respect to any sale of such equipment to governmental agencies not specifically exempted.

28.     Plaintiff suffers, and will continue to suffer adverse economic impact created by the unreasonable prohibition of the sale of RF and cellular jamming devices to state and local law enforcement agencies.

29.     Plaintiff is in doubt as to its rights and liabilities under the aforesaid acts of Congress and Administrative Rules relating to its desire to market and sell radio frequency jamming devices to state and local law enforcement agencies, and seeks a declaration of its rights in connection therewith.

WHEREFORE Plaintiff, CELLANTENNA CORP. hereby requests that this Court enter a declaratory judgment determining that those portions of 47 U.S.C. §302(a)(b) and (c), 47 U.S.C. §333, 47 CFR §2.803 and 47 CFR §2.807 which prohibit the sale of the radio frequency and cellular jamming devices to state and local law enforcement agencies are violative the substantive due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and are therefore are unconstitutional on their face and in their application, or alternatively for a determination that those sections of the aforesaid laws which prohibit the sale of radio frequency jamming devices to state and local governments have been impliedly repealed by the Homeland

Security Act of 2002 and are therefore unenforceable, and such other further relief as the Court deems just and necessary under the circumstances.

### COUNT II - Injunctive Relief

30. Plaintiff readopts and realleges paragraphs 2 through 28 of this Complaint as if set forth herein.

31. The enforcement of 47 U.S.C. §302(a)(b) and (c), 47 U.S.C. §333, 47 CFR §2.803 and 47 CFR §2.807, to the extent that they prohibit Plaintiff from selling cellular jamming devices to state and local governments and/or their law enforcement agencies will cause Plaintiff irreparable harm and injury for which it has no adequate remedy at law.

32. The ominous specter of injury to the Plaintiff, and indeed the general public, as a result of the inability of state and local law enforcement agencies and first responders to obtain the necessary technical equipment which is prohibited to them by the application of the referenced portions of the Communication Act and related FCC rules greatly outweigh any threatened harm that an injunction may cause to the Defendants.

33. Plaintiff's claims herein have a likelihood of success on the merits.

34. The grant of injunctive relief, which will prevent the enforcement of any action to prohibit the sale of RF and cellular jamming devices to state and local law enforcement agencies, would greatly serve the public interest and reinforce the intent of the United States Congress and the Homeland Security Act of 2002.

WHEREFORE Plaintiff, CELLANTENNA CORP. hereby requests that this Court issue a preliminary and permanent injunction, enjoining the FEDERAL COMMUNICATIONS

COMMISSION and THE UNITED STATES OF AMERICA from enforcing restrictions of the sale of cellular jamming devices to state and local governments, and their law enforcement agencies, as set forth in 47 U.S.C. §302(a)(b) and (c), 47 U.S.C. §333, 47 CFR §2.803 and 47 CFR §2.807.

Dated April ____, 2006.

Fort Lauderdale, Florida.

Respectfully submitted,

_____
JEFFREY A. SARROW, P.A.
Attorney for Plaintiff, CELLANTENNA CORP.
300 South Pine Island Road
Suite 304
Plantation, FL 33324
(954) 475-3188 Telephone
(954) 474-4416 Telefax
E-mail: jsarrowpa@aol.com

≈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Cellantenna, Corp

**DEFENDANTS**
Federal Communications Commission and United States of America

CIV - HUCK

(b) County of Residence of First Listed Plaintiff **Broward, Florida**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **District of Columbia**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jeffrey A. Sarrow, P.A.   MAGISTRATE JUDGE
300 South Pine Island Road   SIMONTON
Suite 304
Plantation, Florida 33324 (954) 475-5188

Attorneys (If Known)

**06-60430**

(d) Check County Where Action Arose: ☐ DADE ☐ MONROE ☒ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE-HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

0:06 CV 60430-Huck Simonton

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☒ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Declaratory Relief 28 U.S.C. 2201; challenging constitutionality of 47 U.S.C. 302 and 303
LENGTH OF TRIAL via ____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY   N/A
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE  April 4, 2006
SIGNATURE OF ATTORNEY OF RECORD  [signature]

**FOR OFFICE USE ONLY**
RECEIPT # 32675    AMOUNT 250.00    APPLYING IFP _____

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**(d)** County Where Action Arose. Check only one County.

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.