UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 06-60430-CIV-HUCK/SIMONTON

FILED by _____ D.C.

OCT 11 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

CELLANTENNA CORP.,

   Plaintiff,

v.

FEDERAL COMMUNICATIONS
COMMISSION and THE UNITED STATES
OF AMERICA,

   Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss the Complaint [D.E. #10]. Defendants challenge this court's subject matter jurisdiction on two grounds: (1) that Plaintiff lacks standing, and (2) that the court of appeals has exclusive jurisdiction over this case. For the reasons stated below, this Court GRANTS Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

### Background

The Communications Act of 1934 (the "Act"), 47 U.S.C. §§ 301 *et seq.*, authorizes the Federal Communications Commission ("FCC") to promulgate regulations governing the sale of devices that are capable of interfering with radio communications. However, the Act exempts devices intended for use by the Federal Government, which are developed or procured under Federal Government standards and designed to reduce interference with radio reception. *Id.* § 302a(c).[1] Pursuant to the Act, the FCC promulgated regulations prohibiting the sale of such

---

[1] Section 302a of the Act provides as follows:
(a) Regulations
   The Commission may, consistent with the public interest, convenience, and necessity, make reasonable regulations governing the interference potential of devices which in their

radiofrequency devices. 47 C.F.R. §§2.801 *et seq.* The regulations also exempt devices intended for use by the Federal Government. 47 U.S.C. §2.807.

Plaintiff Cellantenna Corp. ("Cellantenna") is a Florida corporation that sells and distributes radio frequency communication equipment. Among the products Plaintiff distributes are devices which cause radio frequency interference, commonly called "Radio Frequency (RF) Jammers." These devices, including "Cellular Jammers," are designed to deliberately jam or disrupt wireless communications.

On August 24, 2005 the FCC issued a Letter of Inquiry to the Plaintiff regarding a complaint alleging that Plaintiff was "marketing to law enforcement and other government agencies within the United States uncertified devices that intentionally cause radio frequency interference (cell phone jammers) in violation of...47 U.S.C. §302a(b)...and 47 C.F.R. §2.803." FCC Letter at 1.[2] In the letter of inquiry, the FCC directed Plaintiff to support its response to the inquiry with an affidavit or declaration signed by an authorized representative, verifying the information therein. FCC Letter at 1, 4.

On September 13, 2005 Plaintiff's counsel responded to the FCC letter of inquiry and submitted the Declaration of Howard Melamed, the company's president and CEO. Plaintiff stated that it "has not distributed" and "does not distribute" uncertified devices that intentionally

---

      operation are capable of emitting radio frequency energy by radiation, conduction, or other means in sufficient degree to cause harmful interference to radio communications.... Such regulations shall be applicable to the manufacture, import, sale, offer for sale, or shipment of such devices..., and to the use of such devices.
(b) Restrictions
      No person shall manufacture, import, sell, offer for sale, or ship devices..., or use devices, which fail to comply with regulations promulgated pursuant to this section.
(c) Exceptions
      The provisions of this section shall not be applicable to...devices...manufactured...for use by the Government of the United States or any agency thereof.

[2]Letter of Inquiry from FCC to Cellantenna, dated August 24, 2005

cause radio frequency interference to any local or state government, and that the company "markets the Devices only insofar as it has held a strict intention to distribute them in the United States to the extent permitted by" the Act and FCC regulations. Cellantenna Letter at 5.[3] On October 26, 2005, the Spectrum Enforcement Division of the FCC's Enforcement Bureau replied to Plaintiff's letter informing Plaintiff that the FCC "was not planning to take further action regarding these matters," and that the FCC had "closed the investigation." FCC Reply Letter at 1.[4] The FCC noted, however, that Plaintiff "should...not construe the closing of the investigation as a determination that a violation did not occur," and that the FCC "may take future action if the public interest so requires." *Id.* at 2.

On April 4, 2006 Plaintiff commenced the instant suit against the FCC and the United States. Plaintiff alleges that, recognizing that cellular jamming devices are an effective tool to fight terrorism, several state and local agencies contacted the company to explore the purchase of RF Jammers and Cellular Jammers, but that it has been prevented from selling them because the Communications Act and the related FCC regulations prohibit the sale of such devices. Plaintiff argues that because the Act exempts devices intended for use by the Federal Government but does not also exempt devices intended for use by state and local governments, the Act violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiff also argues that those sections of the Communications Act that prohibit the sale of radiofrequency jamming devices to state and local law enforcement agencies were impliedly repealed by the Homeland Security Act of 2002, 6 U.S.C. §§ 101 *et seq.* ("HSA"). Plaintiff seeks declaratory and injunctive relief to prevent the FCC from enforcing the Act and the FCC regulations as applied to the sale of jamming devices to state and local government

---

[3]Letter from Cellantenna to FCC, dated September 13, 2005.

[4]Letter from FCC to Cellantenna, dated October 26, 2005.

agencies.

Defendants seek dismissal of Plaintiff's claims on the grounds that Plaintiff lacks standing to file the lawsuit, that the court of appeals has exclusive jurisdiction to hear this case, and that Plaintiff fails to state a claim upon which relief can be granted.

<u>Standing</u>

A plaintiff seeking to invoke a federal court's jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If a Plaintiff lacks standing the case or controversy requirement of Article III § 2 of the U.S. Constitution is not satisfied, and the case must be dismissed. *Id.* at 560. In assessing the arguments raised in support of dismissal, a court must accept as true all allegations found in the Complaint. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). However, since the parties have filed affidavits and evidence relating to the issue, the Court may consider those submissions in reaching its decision on standing. *Id.* at 501-02.

Standing has three elements that must be met: (1) that plaintiff suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.*

Defendants contend that Plaintiff does not have standing to pursue a claim against them because Plaintiff has not suffered an "injury in fact." According to Defendants because Plaintiff, in its response to the FCC letter, represented that it did not distribute uncertified jamming devices to any local or state government agencies and that it marketed such devices only to the extent permitted by the Act and the FCC regulations, Plaintiff is unable to show that the FCC has

caused the company any legally cognizable injury.[5] Furthermore, Defendants argue, Plaintiff does not have any reasonable apprehension of enforcement by the FCC because the FCC, in its reply letter, indicated that it had closed the investigation and that it did not intend to take further action against Plaintiff. Defendants maintain that Plaintiff's possible future injury fails to satisfy the requirements to have standing because it is merely speculative.

Plaintiff alleges that the challenged statute and regulations have caused plaintiff to suffer adverse economic consequences by restricting the sale of its cellular jammers. Specifically, Plaintiff alleges that it has had to turn away prospective customers who seek to explore the purchase of cellular jamming devices because it fears prosecution if it sells or advertises to potential non-federal customers. Therefore, the only reason Plaintiff has not sold or attempted to sell the radiofrequency devices is because it is prohibited from doing so by the challenged statute and regulations.

Plaintiff's allegations sufficiently set forth an injury in fact. Defendants' argument that Plaintiff has suffered no injury in fact because Plaintiff does not currently sell the radiofrequency devices to local and state agencies suggests that in order to have standing to challenge a statute or regulation that prohibits certain activity, a plaintiff would have to first engage in the illegal activity and face possible prosecution. While a plaintiff cannot assert standing based simply on a speculative injury, a plaintiff seeking declaratory judgment "need not have suffered 'the full harm expected.'" *Khodara Envtl., Inc. v. Blakely*, 376 F.3d 187 (3d Cir. 2004)(citation omitted)(holding that article III standing requirement met where landfill developer claimed it was being prevented from constructing landfill by FAA's interpretation of a statute). In such a case, a plaintiff has Article III standing if "there is a substantial controversy between the parties having

---

[5] Defendants urge the Court to consider the FCC's letter of inquiry to Plaintiff, Plaintiff's response to the FCC letter of inquiry and the FCC's reply. Plaintiff does not oppose the use of the letters for the purpose of determining the standing issue.

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citations and quotation omitted).

In *Sable Communications v. FCC* the plaintiff, a provider of sexually suggestive messages, claimed that a statute and FCC regulation restricting its sexually suggestive telephone services violated its First Amendment rights and sought declaratory and injunctive relief. 827 F.2d 640, 641 (9th Cir. 1987)(*Sable*). The district court held, as an alternative ground for dismissal, that no justiciable case or controversy existed because plaintiff had failed to show its First Amendment rights had actually been chilled. *Id.* at 643. The circuit court reversed, holding that the injury was not too speculative where it appeared the statute applied to plaintiff, where the penalties for noncompliance were substantial, and where the government had announced that it considered the statute effective and declined to agree not to enforce the statute against plaintiff. *Id.* at 643-44. "Under these circumstances," the Court stated, "[plaintiff] should not have to wait until it is actually prosecuted to challenge the statute." *Id.* at 644. (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)(doctors had standing to challenge abortion statute even though none of them had been prosecuted or threatened with prosecution for violation of the statute)).

In this case, Plaintiff is a provider of radiofrequency devices that is being prevented from selling the cellular jamming devices to state and local agencies by the statute and by the FCC regulations. In fact, the FCC wrote a letter of inquiry to Plaintiff informing Plaintiff that it was investigating a complaint that Plaintiff was marketing cellular jammers to law enforcement and other government agencies. After Plaintiff denied engaging in such activity, the FCC sent Plaintiff a reply letter informing Plaintiff that the investigation was closed, but also warning that the FCC "may take future action if the public interest so requires." FCC Reply Letter at 2. Moreover, the penalties for violating the statute and regulations are not insignificant. Violators face a penalty of up to $10,000 per violation, imprisonment for a term up to one year, and the

device used may be seized and forfeited by the Federal Government. 47 U.S.C. §§501-510. Therefore, like in *Sable*, the statute and regulations here appear to be applicable to Plaintiff, and the government has indicated that it may take action against Plaintiff for any violation of the statute and regulations. Like the Plaintiff in *Sable* Plaintiff should not be required to take illegal action and face possible prosecution before it can challenge the statute and regulations.

<u>Exclusive Jurisdiction</u>

Defendants seek to dismiss the Complaint claiming that this court does not have subject matter jurisdiction over the case because the court of appeals has exclusive jurisdiction over challenges to FCC regulations. 28 US.C. §2342(1); 47 U.S.C. §407(a); *FCC v. ITT World Communications, Inc.*, 466 US. 463, 468 (1984). Defendants contend that Plaintiff's challenge necessarily is to the regulations as well as the statute because it is the FCC regulations and the actions taken by the agency to enforce its regulations that would prevent Plaintiff from selling jamming devices to state and local government agencies.

Plaintiff maintains that the district court has jurisdiction over this case because Plaintiff is challenging only the constitutionality of the governing statutes, 47 U.S.C. §302, on substantive due process and equal protection grounds, which raises a federal question. 28 U.S.C. §1331 The fact that related FCC regulations may be implicated, Plaintiff argues, does not necessarily divest the district court of jurisdiction. Plaintiff also argues that the Hobbs Act, 28 U.S.C. §2342(1), is not applicable here because there is no particular order of the FCC which is sought to be enjoined or set aside.

The Communications Act, codified at 47 U.S.C. §402, states that "[a]ny proceeding to enjoin, set aside, annul or suspend any order of the [FCC] under this Act...shall be brought as provided by and in the manner prescribed in chapter 158 of title 28 [the Hobbs Act]." The Hobbs Act, 28 U.S.C. §2342(1) provides that "[t]he court of appeals (other than the United States Court

of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of...all final orders of the [FCC] made reviewable by section 402(a) of title 47."

Therefore, the first question is whether Plaintiff's suit seeks to "enjoin, set aside, annul or suspend" an order of the FCC undertaken pursuant to the Communications Act. The Ninth Circuit has held that a challenge to an FCC regulation is equivalent to an action to enjoin, annul or set aside an order of the FCC. *Sable*, 827 F.2d at 642; *see also United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000); *American Bird Conservancy v. FCC*, 408 F.Supp.2d 987, 991 (D. Haw. 2006)("Where a party seeks to challenge regulations promulgated by the FCC, jurisdiction in the district court is improper."). Therefore, the Hobbs Act applies to any challenge to the FCC regulations - whether or not a final order has been issued - and divests the district court of jurisdiction to hear the challenge. Moreover, "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the circuit court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Telecommunication Research and Action Center v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) (*TRAC*)(holding that the court of appeals has exclusive jurisdiction pursuant to the All Writs Act to address a complaint of agency inaction where the court of appeals is statutorily vested with exclusive jurisdiction to review final agency action); *see also Kabeller v. Busey*, 999 F.2d 1417, 1422 (11th Cir. 1993)( holding that district court did not have jurisdiction over lawsuit seeking declaratory judgment and mandamus compelling FAA to take action on plaintiff's claim of discrimination against the city).

The real question that arises in this case, however, is whether this action challenges the FCC regulations, as Defendants contend, or whether it is a facial challenge to the Communications Act that can be separated from the regulatory challenge and over which this

court would have jurisdiction. As explained below, it appears that they cannot fairly be separated, and that this court therefore lacks jurisdiction over Plaintiff's claim.[6]

Plaintiff cites two cases in support of its position that the court has jurisdiction to hear this action: *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995) and *Presault v. ICC*, 853 F.2d 145 (2d Cir. 1988). In *Moser* the plaintiff claimed that a provision of the Telephone Consumer Act of 1991, 47 U.S.C. §227, banning prerecorded telemarketing calls was a violation of the First Amendment. 46 F.3d at 971. The statute also authorized the FCC to enact limited exemptions from the ban. *Id.* at 972. Pursuant to the statute, the FCC adopted regulations that exempted calls by tax-exempt, non-profit organizations. *Id.* The FCC challenged the district court's subject matter jurisdiction to hear the case, but the Ninth Circuit rejected the FCC's challenge, finding that the plaintiff was challenging "the statute and only the statute." *Id.* at 973. Therefore, the court held, the claim "[did] not reach the regulations which are outside the jurisdiction of the district court." *Id.*

*Presault* dealt with a statute passed by Congress, 16 U.S.C. § 1247(d), which provided that interim railroad trail use was to be treated like a discontinuance rather than abandonment of railroad rights-of-way. 853 F.2d at 147. Pursuant to that statute the ICC could authorize interim trail use to preclude a finding of abandonment under right-of-way state law. *Id.* at 147-48. The plaintiff in *Presault* had filed a petition with the ICC for a certificate of abandonment of a trail line, but the petition was dismissed because the ICC granted the State of Vermont and a Vermont company the right to interim use of that trail under 16 U.S.C. § 1247(d). *Id.* at 148. Plaintiff

---

[6]The Court acknowledges that existing legal precedent concerning a district court's jurisdiction over constitutional challenges to statutes that may implicate the corresponding regulations is limited and somewhat vague. Moreover, none of the parties has cited Eleventh Circuit case law on the specific question presented here, nor has this Court found Eleventh Circuit cases directly dealing with it (*Kabeller*, like *TRAC*, deals with a slightly different question.).

9

conceded that the ICC acted appropriately under the statute, but argued that the statute itself was unconstitutional and sought review of the ICC order from the Second Circuit. *Id.* The ICC contested the circuit court's jurisdiction over the matter, arguing that a facial challenge to the statute, which was being raised for the first time in the court of appeals, should be heard by the district court. *Id.* The Second Circuit agreed with the ICC that "district courts do have jurisdiction to hear constitutional challenges to statutes where no administrative action has yet been taken," but held that after the ICC has issued an order "exclusive jurisdiction lies in the circuit court to modify or rescind the order." *Id.* at 149. The court reasoned that "where...the petitioners' constitutional challenge to the statute is the sole basis for their challenge to the ICC order, it would be nonsensical to require a bifurcated challenge, relegating the constitutional challenge to the statue to a district court that would be unable to formulate any meaningful remedy." *Id.* at 149. Therefore, the court held, the constitutional challenge to the statute was properly heard in the court of appeals. *Id.*

Two other cases may shed some light on the question at issue. In *Sable* the plaintiff challenged both a statute that imposes sanctions on those who make obscene commercial telephone calls available to minors unless the provider has restricted access in accordance with FCC regulations, and the regulations, which set out how providers of sexually suggestive messages should limit access to their services. 827 F.2d 640, 641-42 (9th Cir. 1987). The district court dismissed the case for lack of subject matter jurisdiction finding that "it would be a near impossibility to review the constitutionality of the statute without reviewing the regulation." *Id.* at 642 (internal quotation and citation omitted). The Ninth Circuit affirmed the district court's holding that it lacked jurisdiction to hear the regulatory challenge, but reversed the district court's holding that it could not review the statute independently of the FCC regulation. *Id.* at 644. The court explained that plaintiff's challenge to the statute on the grounds that it was

overbroad, vague and that it created an overly-intolerant national standard for obscenity "[was] not insubstantial," and could be heard separately from the challenge to the regulation. Therefore, the district court had jurisdiction to hear the challenge to the statute. *Id.* at 643.

In a somewhat different context, the D.C. Circuit Court upheld the general federal question jurisdiction of federal district courts "to consider a facial challenge to a statute's constitutionality so long as that challenge is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute or in a suit that is collateral to one challenging the validity of such agency action." *Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996) (*Time Warner*). In *Time Warner*, the plaintiff sought an order from the district court to enjoin the FCC from issuing any regulation under the Cable Television Consumer Protection and Competition Act (1992 Act), claiming that certain provisions of the Act violated the plaintiff's First Amendment rights. On appeal, the circuit court affirmed the district court's jurisdiction to hear the challenge noting that it "involved a direct constitutional challenge to congressional legislation, which, if plaintiffs [we]re correct, could never justify future agency action to implement or enforce it." *Id.* at 964 (citing *Time Warner Entm't Co. v. FCC*, 810 F.Supp. 1302 (D.D.C. 1992))(internal quotation omitted). Therefore, the case was "entirely independent of any agency proceedings, whether actual or prospective," and limiting jurisdiction to the court of appeals would do "nothing to advance a primary policy consideration" of promoting judicial economy and fairness to litigants by taking advantage of the expertise developed by appellate courts "concerning the agencies assigned them for review." *Id.* at 965.

In this case, Plaintiff claims that district court jurisdiction is appropriate because it is bringing a facial challenge to the constitutionality of those sections of the Communications Act that "arbitrarily prohibit the sale and distribution of radio frequency interference devices to state and local law enforcement agencies, while permitting the sale of such items to ... [the] United

11

States government" Pl. Cmplt. ¶25. (citing 47 U.S.C. §302(a)(b) and (c) and FCC Rule 2.803). The legislative history for 47 U.S.C. §302 reveals that in enacting this statutory provision, which was an amendment to the Communications Act[7], Congress sought to give the FCC the authority to prescribe regulations for the manufacture, sale, offer for sale, shipment and import of devices that caused harmful interference to radio reception so that the FCC could essentially prohibit the manufacture or sale of such devices. *See* S.R. Report No. 1276, 90th Cong., 2d Sess. 1968, 1968 U.S.C.C.A.N. 2486-87. The FCC regulations do this by requiring that before equipment having an interference potential is put on the market, the equipment meet the Commission's technical standards, which are designed to assure that the electromagnetic energy emitted by these devices do not cause harmful interference to radio and cellular reception. *See Id.* at 2487; 47 C.F.R. §2.803.

Plaintiff challenges the Communications Act and the FCC regulations on two grounds: (1) that they violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and (2) that they were impliedly repealed by the HSA.

The case law suggests that a claim such as this falls under the exclusive jurisdiction of the court of appeals. *Moser, Presault, Sable* and *Time Warner* all indicate that federal district courts have jurisdiction to hear facial constitutional challenges to a statute under 28 U.S.C. §1331, even if the statute commits review of agency action promulgated under the statute to another court, but only where the statutory challenge is separate and distinct from any challenge to the regulations. *Presault* holds that the court of appeals would have exclusive jurisdiction to hear a challenge to an agency order, even if plaintiff bases the attack on the constitutionality of the enabling statute, where there has already been agency action. Under *Time Warner*, however, a constitutional

---

[7]The FCC already had authority under Section 301 of the Communications Act to prohibit the *use* of equipment causing interference to radio communications.

challenge directed to a statute which is the source of putative agency authority, seeking to enjoin agency action is sufficiently independent from regulatory action to permit the district court to have jurisdiction over the matter. In *Moser* the district court had jurisdiction over the action where the plaintiff challenged the statute on its face. There, it was more evident that the regulations were not implicated because the regulations merely crafted an exception to the statute, which the plaintiff was not challenging.

*Sable* seems to delve into a murky area because the statute at issue there made it unlawful to make obscene telephone calls available to minors unless the provider of the calls restricted access in accordance with the FCC regulations, but it was the regulations which set out how access should be limited. 827 F.2d at 641. The district court determined that it was unable to separate the statute and regulations for purposes of hearing the First Amendment challenge, but the court of appeals disagreed, and provided little explanation for its finding, except to say that the First Amendment challenge to the statute was substantial. *Id.* at 643. Yet, in that case also the separation between the challenge to the statute and the regulation seemed more feasible because the overbreadth and vagueness claims were a challenge to a standard created by the statute itself by penalizing providers who made available to minors "obscene" telephone calls.

In this case, it does not seem reasonably possible to challenge the statute without implicating the regulations. While Plaintiff maintains that its claims constitute only a facial challenge to the Act, it is the regulations themselves that prohibit the sale or manufacture of the radiofrequency devices by requiring that manufactured or sold radiofrequency devices be certified, and by making the certification requirements such that a device that may cause radiofrequency interference will not be certified. Moreover, unlike the First Amendment claim in *Sable* the claims here do not appear to be substantial if directed only at the statute. The equal protection and substantive due process claim is based on Plaintiff's contention that it is unfairly

being denied its fundamental right to pursue a trade under the Privileges and Immunities Clause, Article IV, §2 of the Constitution, or, in the alternative, that the statute is not rationally related to a legitimate government interest. That claim necessarily implicates the regulations, which, by prohibiting the sale of the radiofrequency devices, allegedly impinge upon the Plaintiff's rights. The statute, on its own, does not prohibit anything, but merely enables the FCC to regulate the sale and manufacture of radiofrequency devices, and exempts the Federal Government from those regulations.

Plaintiff's second claim, that the HSA impliedly repealed the statute, similarly requires a review of the regulations. That claim is based on language in the HSA directing the Department of Homeland Security to take whatever measures are necessary to empower local law enforcement agencies in the fight against terrorism, to coordinate its efforts with local and state government, and directing the Secretary to develop countermeasures to terrorist threats in partnership with state and local agencies. According to Plaintiff, that language is directly contrary to the statute and regulations challenged here and impliedly repeal them. Again, the claim implicates the regulations because the regulations are what prohibit the sale of the radiofrequency devices to state and local authorities.

Therefore, like *Presault* and unlike *Time Warner* or *Moser*, the challenge here implicates agency action and the regulations passed by the FCC, and exclusive jurisdiction is committed to the court of appeals. Accordingly, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss for lack of jurisdiction is GRANTED.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

14